UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.:23-cv-20748-DPG

SUZON LUCORE,

     Plaintiff,

v.

NCL (BAHAMAS) LTD.,
d/b/a NORWEGIAN CRUISE LINE,

     Defendant,

_____/

## AMENDED COMPLAINT

The Plaintiff, SUZON LUCORE (hereinafter "Plaintiff" or "SUZON"), hereby

sues the Defendant, NCL (BAHAMAS) Ltd., d/b/a NORWEGIAN CRUISE LINE

(hereinafter "Defendant" "the cruise line" or "NORWEGIAN") and files this

Amended Complaint for Damages and says:

## THE PARTIES AND JURISDICTION

1.     This is an action for damages which exceeds seventy-five thousand

dollars ($75,000.00) exclusive of interest, costs and attorney's fees.

2.     The Plaintiff, SUZON LUCORE, is *sui juris* and is a citizen and

resident of Sacramento, California for purposes of diversity.

3.      The Defendant, Norwegian, is a foreign corporation incorporated in Bermuda, authorized to do business in the State of Florida, and at all material times hereto was and is doing business in Miami-Dade County, Florida.  The Defendant's principal place of business is in Miami-Dade County, Florida.  The Defendant is a citizen of Florida for purposes of diversity.

4.      Federal subject matter jurisdiction arises under the court's diversity jurisdiction (28 U.S.C. §1332) as this is a civil action where the matter in controversy exceeds the sum or value of seventy-five thousand dollars ($75,000.00) exclusive of interest and costs and is between the citizens of different states and/or citizens of a state and citizens or subjects of a foreign state.

5.      This action also arises under the court's admiralty or maritime jurisdiction (28 U.S.C. §1333).

6.      Furthermore, this action is being filed in the United States District Court for the Southern District of Florida, Miami Division pursuant to clause 14 of the passenger ticket contract issued by the Defendant which in relevant part states:

**14.    Venue and Governing Law**

Except as otherwise specified herein, any and all disputes whatsoever arising out of or relating to this Contract or the Guest's cruise, as well as the interpretation, applicability, and enforcement of this Contract shall be governed exclusively by the general maritime law of the United States, which shall include the Death on the High Seas Act (46 USCS §

2

30302) without regard to choice of law rules, which replaces, supersedes and preempts any provision of law of any state or nation to the contrary. It is hereby agreed that any and all claims, disputes or controversies whatsoever arising from, related to, or in connection with this Contract or the Guest's voyage, including any activities on or off the vessel or transportation furnished therewith, with the sole exception of claims subject to binding arbitration under Section 10(b) above, shall be commenced, filed and litigated, if at all, before the United States District Court for the Southern District of Florida in Miami, Florida, U.S.A., or as to those lawsuits for which the United States District Court for the Southern District of Florida lacks subject matter jurisdiction, before a court of competent jurisdiction in Miami-Dade County, Florida, U.S.A., to the exclusion of the Courts of any other country, state, city or county where suit might otherwise be brought.

7.      The Defendant, at all times material hereto, itself or through an agent or representative, in the County and in the District in which this Complaint is filed:

(a)      operated, conducted, engaged in or carried on a business venture in this state and/or county; and/or

(b)      had an office or agency in this state and/or county; and/or

( c)     engaged in substantial activity within this state; and/or

(d)      committed one or more of the acts stated in Fla. Stat. 48.081, 48.181 or 48.193.

8.      All conditions precedent for filing and maintaining this action have been fulfilled, have been waived, or do not apply.

## COMMON ALLEGATIONS

9.     The incident occurred on May 3, 2022.

10.     The incident occurred on board a NORWEGIAN vessel known as *MS Norwegian Breakaway*, a ship in navigable waters while the Plaintiff was a passenger on board.  Accordingly, the Plaintiff's claims are governed by the general maritime law.  Specifically, the Plaintiff's incident occurred in her disabled accessible room # 12886 on the starboard side of the twelfth deck closer to the stern of the ship which the Plaintiff shared with her sister for the duration of the cruise.

11.     On May 2, 2022 the Plaintiff's sister was injured when a metal shard which was protruding from the edge of the ramp leading from the interior of the cabin to the balcony pierced the sole of her foot.  The Plaintiff's sister reported the incident and was informed that the ramp would need to be taken to the ship's maintenance area to be repaired.

12.     On May 3, 2022 a female cruise line employee called to let the Plaintiff know that she needed to drop by their cabin to inspect the damaged ramp. A minute or so later the Plaintiff heard a knock on the cabin door and a deep male voice identified himself as a member of the housekeeping staff.  The Plaintiff looked through the cabin door peephole and saw that the man was dressed in a uniform.

13.     The Plaintiff moved towards the door to open the door slightly in order

to find out what the housekeeper wanted. When the Plaintiff manually opened the automatic door of the cabin the automatic door did not stop. The Plaintiff raised her hand and pushed against the door to stop it but the door kept on opening and came into contact with her right foot and slid over her right toe ripping the nail of her right toe off the nailbed. The housekeeping employee apologized profusely as blood began filling the Plaintiff's shoe and spilling onto the carpet.

14.    The injury to the Plaintiff's right toe which occurred on the second full day of the cruise saw Plaintiff confined to a wheelchair for the duration of the cruise and unable to enjoy all the shore excursions and the other onboard activities thereby totally ruining the vacation that she had hoped to enjoy in the company of her sister.

15.    Furthermore upon returning to her home in California, Plaintiff was constrained to restrict her mobility for several weeks and ambulate with the assistance of a cane until she recovered from her injury.

## COUNT ONE - NEGLIGENCE (FAILURE TO WARN)

16.    Plaintiff hereby adopts and re-alleges each and every allegation in paragraphs 1 through 15 as if set forth herein.

17.    The Defendant owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

18.    Such duties also include, but are not limited to, the duty to warn

passengers of known dangers which are not open and obvious which passengers may reasonably be expected to encounter.

19.     The cabin door in question was a low-energy power operated door designed to be opened manually by some users and automatically by others. Such doors are subject to limitations on opening speed and force to curtail the generation of kinetic energy and the potential for injury. Specifically, these doors are designed to include "...a power mechanism that opens the door upon receipt of a knowing act activating signal [which] does not generate more kinetic energy than 1.25 lbf-ft (1.69Nm), and is closed by a power mechanism or by other means." §2.2 of ANSI/BHM A156.19-2013.

20.     The problem with the use of a low-energy power operated door is that such doors utilize no sensors of any kind whatsoever and should, therefore, be used only for "trained traffic".  That is, they should be used *only* by people who are trained in advance as to how the door functions, its limitations, the hazards its lack of sensors presents, and how to avoid being struck and injured by the sensor-less door.  Such doors are appropriate *only* in circumstances in which those using the door are strictly limited to those who are known and trained in advance on the safe use of the door, such as commonly encountered in internal institutional medical operations (e.g. access to operating rooms, radiology facilities, etc.) and other contexts in which use

by the general public is forbidden.

21.     Low-energy power operated doors are free to hit users located within the path of the door due to their complete lack of safety sensors that would otherwise serve to prevent the door from ever hitting users.  This is not so of the far more prevalent kind of automatic door encountered by users and to which users, such as the Plaintiff, are accustomed.  That is, automatic doors incorporating a full array of sensors designed and intended to prevent such doors from ever hitting users within the path of the door.

22.     Due to its complete lack of safety sensors, the door constituted a readily forseeable dangerous condition that presented the Plaintiff with an unreasonable risk of harm that was not obvious and open, a fact that the Defendant was, or should have been, aware.

23.     Because of the proliferation of safety sensor-equipped doors designed never to strike or close upon a user, users of low-energy power operated doors assume that all power operated doors are equipped with safety sensors and that, consequently, they will not strike them if they are in their path. For this reason, a reasonably prudent person would not discover or be aware of the unreasonably dangerous condition presented by a low-energy power operated door.  Consequently, a reasonable person in the Plaintiff's position would not forsee the danger presented by the subject low-

7

energy door.

24.     Similarly, the special properties of the subject door relative to the more familiar doors that otherwise appear identical but, in fact, incorporate a full array of safety sensors made the subject door unreasonably dangerous. To a reasonable person such as the Plaintiff, the danger presented by the subject door was unavoidable and imposed a uniquely high likelihood of harm.  Utterly lacking safety sensors, the Plaintiff opened the door and was unavoidably struck by it while within its path.

25.     The Plaintiff was unaware of the unavoidable and unreasonably dangerous condition of the subject door because the cabin door was not equipped with the necessary signage to educate the Plaintiff on the proper use of the door and to warn the Plaintiff about the risks of being hit by the door due to the lack of safety sensors.

26.     This is why such doors "shall be equipped with signage visible from either side of the door, instructing the user as to the operation and function of the door.  The signs shall be mounted 50" +/- 12"(1270mm +/- 305mm) from the floor to the center line of the sign.  The letters shall be 5/8 inch (16mm) high minimum" §6.1 of ANSI/BHM A156.19-2013.

27.     Moreover "all low energy doors shall be marked with signage visible from both sides of the door, with the words "AUTOMATIC CAUTION DOOR".  The

sign shall be a minimum of 6 inches (152mm) in diameter with black lettering on a yellow background. Additional information may be included." §6.4.1 of ANSI/BHM A156.19-2013.

28.     Furthermore, "when a **Knowing Act Switch** is used to initiate the operation of the door operator, the doors shall be provided with signs on each side of the door where the switch is located, with the message "ACTIVATE SWITCH TO OPERATE". The lettering shall be white and the background shall be blue." " §6.4.2 of ANSI/BHM A156.19-2013.

29.     Other similar low energy power operated doors such as in the disabled accessible stalls in the public restrooms on board the ship did contain some but not all of the required signage indicating that the Defendant was aware of the need to at least warn the Plaintiff about the risks of being hit by the door due to the lack of safety sensors.

30.     Defendant's negligence in failing to equip the cabin door with the necessary signage to educate the Plaintiff on the proper use of the door and to warn the Plaintiff about the risks of being hit by the door due to the lack of safety sensors proximately caused Plaintiff great bodily harm in that, but for the Defendant's negligence, Plaintiff's injuries would not have occurred.

31.     As a result of the Defendant's negligence, Plaintiff has suffered bodily

9

injury resulting in pain and suffering, mental anguish, loss of capacity for the enjoyment of life beginning with the loss of enjoyment of the cruise, loss of all the expense involved in paying for the cruise itself, transportation to and from Miami to go on the cruise and other related expenses, the expense of medical and nursing care and treatment, lost income and the loss of a longstanding client and other losses stemming from the Defendant's negligence.

WHEREFORE, Plaintiff, Suzon Lucore, demands judgment against Defendant, Norwegian, for damages suffered and costs incurred, for all court costs, pre- and post-judgment interest, and for any and all other relief which the Court deems just or appropriate.

## COUNT TWO - NEGLIGENCE (FAILURE TO INSTALL PROPER AND REASONABLE SAFEGUARDS)

32.     This count is plead in the alternative.

33.     Plaintiff hereby adopts and re-alleges each and every allegation in paragraphs 1 through 15 as if set forth herein.

34.     The Defendant owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

35.     Such duties also include, but are not limited to, installing proper and reasonable safeguards to prevent passengers from being injured.

36.     The cabin door in question was a low-energy operated door designed to be opened manually by some users and automatically by others.  Such doors are subject to limitations on opening speed and force to curtail the generation of kinetic energy and the potential for injury. Specifically, these doors are designed to include "...a power mechanism that opens the door upon receipt of a knowing act activating signal [which] does not generate more kinetic energy than 1.25 lbf-ft (1.69Nm), and is closed by a power mechanism or by other means." §2.2 of ANSI/BHM A156.19-2013.

37.     The problem with the use of a low-energy power operated door is that such doors utilize no sensors of any kind whatsoever and should, therefore, be used only for "trained traffic".  That is, they should be used *only* by people who are trained in advance as to how the door functions, its limitations, the hazards its lack of sensors presents, and how to avoid being struck and injured by the sensor-less door.  Such doors are appropriate *only* in circumstances in which those using the door are strictly limited to those who are known and trained in advance on the safe use of the door, such as commonly encountered in internal institutional medical operations (e.g. access to operating rooms, radiology facilities, etc.) and other contexts in which use by the general public is forbidden.

38.     Low-energy power operated doors are free to hit users located within the

11

path of the door due to their complete lack of safety sensors that would otherwise serve to prevent the door from ever hitting users.  This is not so of the far more prevalent kind of automatic door encountered by users and to which users, such as the Plaintiff, are accustomed.  That is, automatic doors incorporating a full array of sensors designed and intended to prevent such doors from ever hitting users within the path of the door.

39.    Due to its complete lack of safety sensors, the door constituted a readily forseeable dangerous condition which was not open and obvious and that presented the Plaintiff with an unreasonable risk of harm, a fact that the Defendant was, or should have been, aware.

40.    Because of the proliferation of safety sensor-equipped doors designed never to strike or close upon a user, users of low-energy power operated doors assume that all power operated doors are equipped with safety sensors and that, consequently, they will not strike them if they are in their path. For this reason, a reasonably prudent person would not discover or be aware of the unreasonably dangerous condition presented by a low-energy power operated door.  Consequently, a reasonable person in the Plaintiff's position would not forsee the danger presented by the subject low-energy door.

41.    Similarly, the special properties of the subject door relative to the more

12

familiar doors that otherwise appear identical but, in fact, incorporate a full array of safety sensors made the subject door unreasonably dangerous. To a reasonable person such as the Plaintiff, the danger presented by the subject door was unavoidable and imposed a uniquely high likelihood of harm.  Utterly lacking safety sensors, the Plaintiff opened the door and was unavoidably struck by it while within its path.

42.     The Plaintiff was unaware of the unavoidable and unreasonably dangerous condition of the subject door because the cabin door was not equipped with the necessary signage to educate the Plaintiff on the proper use of the door and to warn the Plaintiff about the risks of being hit by the door due to the lack of safety sensors.

43.     The Defendant knew, or should have known, of the dangerous condition presented by the subject door to users such as the Plaintiff because the Defendant had installed warning signs on similar low energy power operated doors in the disabled accessible stalls in the public bathrooms on board.

44.     The door could readily have been modified not to be unreasonably dangerous simply by adding the requisite safety sensors, which sensors are both inexpensive and easily and quickly added.

45.     The electronic control box used by the cabin door is (i) either already designed to accept inputs from a variety of safety sensors or (ii) can be easily

13

modified to accept inputs from safety sensors or (iii) replaced with an electronic box designed to accept inputs from a variety of safety sensors that would have prevented the incident and that would have involved no expense beyond either (i) the installation of the sensors themselves or alternatively (ii) the additional reasonable expense of the modification of the electronic control box to accept inputs from safety sensors or (iii) the alternative reasonable expense of the installation of an electronic control box to accept inputs from safety sensors. However, the Defendant chose (i) not to install such sensors, or (ii) modify the existing electronic control box to accept inputs from safety sensors, or (iii) install an electronic control box to accept inputs from safety sensors even although Norwegian Cruise Lines generated roughly $4.8 billion dollars in revenue in 2022.

46.     Defendant's negligence in failing to either (i) install the necessary safety sensors or (ii) modify the existing electronic control box to accept inputs from safety sensors, or (iii) install an electronic control box to accept inputs from safety sensors proximately caused Plaintiff great bodily harm in that, but for the Defendant's negligence, Plaintiff's injuries would not have occurred.

47.     As a result of the Defendant's negligence, Plaintiff has suffered bodily injury resulting in pain and suffering, mental anguish, loss of capacity for the enjoyment of life beginning with the loss of enjoyment of the cruise, loss of all the

expense involved in paying for the cruise itself, transportation to and from Miami to go on the cruise and other related expenses, the expense of medical and nursing care and treatment, lost income and the loss of a longstanding client and other losses stemming from the Defendant's negligence.

WHEREFORE, Plaintiff, Suzon Lucore, demands judgment against Defendant, Norwegian, for damages suffered and costs incurred, for all court costs, pre- and post-judgment interest, and for any and all other relief which the Court deems just or appropriate.

## COUNT THREE - NEGLIGENCE (FAILURE TO MAINTAIN AND INSPECT)

48.     This count is plead in the alternative.

49.     Plaintiff hereby adopts and re-alleges each and every allegation in paragraphs 1 through 15 as if set forth herein.

50.     The Defendant owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

51.     Such duties also include, but are not limited to, maintaining and inspecting the automatic door which caused the Plaintiff's injury to ensure that it was in a reasonably safe condition, so as to prevent hazards to its passengers.

52.     The cabin door in question was a low-energy operated door designed to

be opened manually by some users and automatically by others. Such doors are subject to limitations on opening speed and force to curtail the generation of kinetic energy and the potential for injury. Specifically, these doors are designed to include "...a power mechanism that opens the door upon receipt of a knowing act activating signal [which] does not generate more kinetic energy than 1.25 lbf-ft (1.69Nm), and is closed by a power mechanism or by other means." §2.2 of ANSI/BHM A156.19-2013.

53.      The problem with the use of a low-energy power operated door is that such doors utilize no sensors of any kind whatsoever and should, therefore, be used only for "trained traffic". That is, they should be used *only* by people who are trained in advance as to how the door functions, its limitations, the hazards its lack of sensors presents, and how to avoid being struck and injured by the sensor-less door. Such doors are appropriate *only* in circumstances in which those using the door are strictly limited to those who are known and trained in advance on the safe use of the door, such as commonly encountered in internal institutional medical operations (e.g. access to operating rooms, radiology facilities, etc.) and other contexts in which use by the general public is forbidden.

54.      Low-energy power operated doors are free to hit users located within the path of the door due to their complete lack of safety sensors that would otherwise

16

serve to prevent the door from ever hitting users.  This is not so of the far more prevalent kind of automatic door encountered by users and to which users, such as the Plaintiff, are accustomed.  That is, automatic doors incorporating a full array of sensors designed and intended to prevent such doors from ever hitting users within the path of the door.

55.    Due to its complete lack of safety sensors, the door constituted a readily forseeable dangerous condition which was not open and obvious that presented the Plaintiff with an unreasonable risk of harm, a fact that the Defendant was, or should have been, aware.

56.    Because of the proliferation of safety sensor-equipped doors designed never to strike or close upon a user, users of low-energy power operated doors assume that all power operated doors are equipped with safety sensors and that, consequently, they will not strike them if they are in their path. For this reason, a reasonably prudent person would not discover or be aware of the unreasonably dangerous condition presented by a low-energy power operated door.  Consequently, a reasonable person in the Plaintiff's position would not forsee the danger presented by the subject low-energy door.

57.    Similarly, the special properties of the subject door relative to the more familiar doors that otherwise appear identical but, in fact, incorporate a full array of

safety sensors made the subject door unreasonably dangerous. To a reasonable person such as the Plaintiff, the danger presented by the subject door was unavoidable and imposed a uniquely high likelihood of harm.  Utterly lacking safety sensors, the Plaintiff opened the door and was unavoidably struck by it while within its path.

58.    The Plaintiff was unaware of the unavoidable and unreasonably dangerous condition of the subject door because the cabin door was not equipped with the necessary signage to educate the Plaintiff on the proper use of the door and to warn the Plaintiff about the risks of being hit by the door due to the lack of safety sensors.

59.    The Defendant knew, or should have known, of the dangerous condition presented by the subject door to users such as the Plaintiff because the Defendant had installed warning signs on similar low energy power operated doors in the disabled accessible stalls in the public bathrooms on board.

60.    Every low energy door system must operate slowly and with minimal force upon impact or resistance. A properly adjusted low energy doorway will stop, stall, or reverse when an obstruction is encountered during its operations. Daily inspections of all low energy door systems is an industry wide requirement to ensure that it is functioning properly so as to operate slowly and with minimal force upon impact or resistance.

61.     The Defendant knew or should have known that it was an industry wide requirement to have daily inspections of the low energy power operated cabin door that injured the Plaintiff so as to adjust the door as necessary to cause it to stop, stall or reverse when obstructed yet the Defendant failed to implement a daily inspection program of the door which would have ensured that the necessary adjustments were made to the electronic control box to ensure that it always operated with no more force then permitted.

62.     Defendant's negligence in not conducting daily inspections of the electronic control box resulted in the Defendant failing to adjust the electronic control box so that it would operate in such a way as to stop, stall or reverse when encountering the Plaintiff's body part and proximately caused Plaintiff great bodily harm in that, but for the Defendant's negligence, Plaintiff's injuries would not have occurred.

63.     As a result of the Defendant's negligence, Plaintiff has suffered bodily injury resulting in pain and suffering, mental anguish, loss of capacity for the enjoyment of life beginning with the loss of enjoyment of the cruise, loss of all the expense involved in paying for the cruise itself, transportation to and from Miami to go on the cruise and other related expenses, the expense of medical and nursing care and treatment, lost income and the loss of a longstanding client and other losses

stemming from the Defendant's negligence.

WHEREFORE, Plaintiff, Suzon Lucore, demands judgment against Defendant, Norwegian, for damages suffered and costs incurred, for all court costs, pre- and post-judgment interest, and for any and all other relief which the Court deems just or appropriate.

## RESERVATION OF RIGHTS

64.     The Plaintiff reserves the right to move to further amend her Complaint should discovery reveal other acts or omissions constituting a breach of duty to use reasonable care.

## DEMAND FOR JURY TRIAL

Plaintiff, Suzon Lucore, demands trial by jury on all issues so triable.

Dated July 12, 2023.                    Respectfully Submitted,

By:*Anthony V. Falzon*
ANTHONY V. FALZON P.A.
12000 Biscayne Boulevard
Suite 100
Miami, FL 33181
Tel: (786) 703 4181
Fax: (786) 703 2961
E-mail: tony@anthonyfalzon-law.com
Fla. Bar No. 69167

20

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via CM/ECF this 12th day of July, 2023.

/s/ Anthony V. Falzon
Anthony V. Falzon, Esquire